IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 JUL -5  A 10: 35

DEBRA P. HACKETT, CLK
U. S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| CECELIA TINNEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | NO. 3:06CV596- |
| | * | |
| LEXINGTON INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |

## NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION:**

COMES NOW Defendant Lexington Insurance Company ("Lexington"), by and through its undersigned counsel, appearing specially so as to reserve any and all defenses available under Rule 12 of the *Federal Rules of Civil Procedure*, and files this Notice of Removal of this action from the Circuit Court of Randolph County, Alabama, to the United States District Court for the Middle District of Alabama, Eastern Division, and in support hereof, respectfully show:

## BACKGROUND

Plaintiff filed this action on May 1, 2006 in Randolph County, Alabama being Case No. CV-06-072. Plaintiff alleges that her Orange Beach, Alabama condominium unit suffered extensive damage in September of 2004 during Hurricane Ivan and that Defendant Lexington breached their insurance contract with her and acted in bad faith by failing to pay her Hurricane related losses in accordance with policy terms. Plaintiff seeks compensatory and punitive damages, but stated in her Complaint that her claim for damage is for an amount of money that

does not exceed $74,000. A copy of all the process, pleadings, and orders that have been served on Lexington are attached hereto as Exhibit A.

Lexington was served with the Complaint on May 22, 2006 and served a timely Answer on June 21, 2006. Along with its answer, Lexington served Plaintiff with its first requests for admission, which, among other requests, asked Plaintiff to admit that she would not ask the jury to return a verdict in excess of $75,000 and that she would not amend her Complaint to seek more than $75,000. (Exhibit B, Lexington's First Requests for Admission). Plaintiff responded to these requests on June 22, 2006, by refusing to admit that she would not amend her complaint to seek more than $75,000 and by refusing to admit that she would not ask the jury to return a verdict in excess of $75,000. (Exhibit C, Plaintiff's Responses to Request for Admissions).

Pursuant to 28 U.S.C. § 1446(b), "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . ." This Notice of Removal is being filed within 30 days of Lexington's receipt of Plaintiff's responses to its requests for admission, which was Lexington's first notice that this case was removable.

## GROUNDS FOR REMOVAL

Lexington, files this Notice of Removal pursuant to 28 U.S.C. 1441 and 1446. This Court has diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 in that Lexington and the Plaintiff are residents and citizens (both individual and corporate) of different states, and the amount in controversy exceeds the jurisdictional requisite of $75,000.00, exclusive of interest and costs.

2

## I.    COMPLETE DIVERSITY IS PRESENT

According to the Complaint, Plaintiff Cecelia Tinney is a resident citizen of the State of Alabama. (Exhibit A, Complaint at ¶ 1). Defendant, Lexington is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Massachusetts. Complete diversity, therefore, exists among the parties in this lawsuit.

## II.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

Since Plaintiff's *ad damnum* clause states that she is seeking no more than $74,000 for all counts combined, the burden is on the Lexington to establish to "a legal certainty" that the amount in controversy is more than the jurisdictional minimum. *Burns v. Windsor*, 31 F.3d 1092 (11th Cir. 1994). The standard is an objective one; plaintiff or plaintiff's counsel's subjective intent in drafting the *ad damnum* is not the true issue. *Id.* at 1096. The defendant ***does not*** have to prove that the plaintiff was being dishonest or acting in bad faith to prevail. *Id.* at 1096 n.10.

The appropriate way to measure the amount in controversy is to assume that all of the allegations in the complaint are true and that the jury returns a plaintiff's verdict on all claims made in the complaint. *Jackson v. American Bankers Ins. Co.*, 976 F. Supp. 1450 (S.D. Ala. 1997). The court should apply state law rules regarding the applicable measure of damages and the availability of special and punitive damages. *See, e.g., Ryan v. State Farm Mut. Auto Ins. Co.*, 934 F.2d 276, 277 (11th Cir. 1991).

In *Jackson v. American Bankers Ins. Co.*, the plaintiff filed a complaint against several out of state insurance and credit card companies in the Circuit Court of Choctaw County alleging breach of contract, bad faith, fraudulent misrepresentation, and harassment. 976 F. Supp. at 1450. The complaint specifically alleged that the plaintiff was the holder of credit cards issued by the defendant credit card companies and that in response to their solicitations she purchased

insurance which would make her credit card payments in the event she became unemployed or disabled. *Id.* Plaintiff further alleged that when she became disabled the defendant insurance companies wrongfully failed to pay her benefits and that the defendant credit card companies harassed her through attempts to collect the outstanding balance on her credit card. *Id.* Plaintiff's complaint contained an *ad damnum* clause that demanded punitive and compensatory damages not to exceed $70,000. *Id.* at 1451. Despite the *ad damnum* clause, the Southern District held that defendant met the legal certainty test by submitting affidavits from two experts who opined that based on the allegations in the compliant, and the fact that there were consistently high jury verdicts against out of state defendants in Alabama, the amount in controversy exceeded $75,000. *Id.* at 1452-53.

This case is similar to *American Bankers* in that Plaintiff is suing an out of state insurance company in a rural county for breach of contract, and bad faith, in relation to an alleged failure to pay insurance benefits. Much like the plaintiff in *American Bankers*, assuming the Plaintiff's allegations in this case are true, the amount in controversy clearly exceeds $75,000.[1]

Plaintiff's *ad damnum* clause limiting her damages to $74,000 is illusory, in that a jury can ignore it and Plaintiff can amend it. Only taking into consideration Plaintiff's claims for compensatory damages it is clear to a legal certainty that the amount in controversy exceeds $75,000. In addition to compensatory damages this Plaintiff seeks punitive damages. For these reasons, Lexington can meet the heavy "legal certainty" burden.

---

[1] Lexington, in making the arguments contained herein in support of their statutory right to removal, does not in any way admit or concede that they <u>are</u> culpable in any amount to Plaintiff.

4

**a. Plaintiff's *ad damnum* clause which purports she only seeks $74,000 is illusory.**

The *ad damnum* clause is illusory because, under Alabama law, Plaintiff can amend her complaint to take out the damage limit without leave of the court until 42 days before the first setting of the case for trial. Ala. R. Civ. Pro. 15(a). Even within the 42-day window of the first trial setting (and thereafter) she can amend with leave of the court for good cause shown. *Id.* This means Plaintiff could easily wait out the one year time limit in which a defendant can remove under 28 U.S.C. 1446 and then amend her damages demand to a number in excess of this courts jurisdictional minimum.

Plaintiff's response to Lexington's Requests for Admission evidences her intent to amend her Complaint. In request 10 Lexington asked Plaintiff to "[a]dmit that you will not seek to amend your Complaint to seek an amount exceeding $75,000, exclusive of the interest and costs of this lawsuit, regardless of any evidence that is currently known or which may be discovered in the process of this litigation." (Exhibit B, at 10). Plaintiff responded, "Plaintiff cannot admit the allegations of Paragraph 10 as she does not know what may be discovered in the process of this litigation. It is admitted as to evidence currently known." (Exhibit C, at 11). Even though Plaintiff is claiming she is only seeking $74,000, she could easily change this amount after the time limit for Lexington to remove has passed.

A second, and perhaps more compelling, reason why the $74,000 *ad damnum* demand is inconsequential is that the jury can ignore it. Under *Alabama Rule of Civil Procedure* 54(c) a party is entitled to the amount of damages a jury awards regardless of what her pleading requests. Consequently, a trial court cannot reduce a verdict exceeding the amount demanded in an *ad damnum* clause solely on the basis that the verdict exceeds the amount demanded by the

Plaintiff's complaint. *See Fuller v. Preferred Risk Life Ins. Co.*, 577 So. 2d 878 (Ala. 1991) (trial court erred in reducing the verdict to the amount stated in the complaint). In *Fuller*, the Alabama Supreme Court held that "[t]he adoption of the Alabama Rules of Civil Procedure in July 1973 ensured that the relief available to a plaintiff was not limited by the pleadings filed by his attorney" (citations omitted). *Fuller*, 577 So. 2d at 883.

In this case, Plaintiff's intention to argue that she is entitled to more than $75,000 is clearly evidenced by her response to Lexington's Requests for Admission. In request number 11, Lexington asked Plaintiff to "[a]dmit that neither you nor your attorney will request that the trier of fact return a verdict in your favor and seek an award of damages, whether compensatory or punitive, that exceeds $75,000, exclusive of interest and costs of this lawsuit, regardless of any evidence that is currently known or which may be discovered in the process of this litigation." (Exhibit B, at 11). Plaintiff's refused to unconditionally admit to this request. Instead she responded "[a]dmitted as to evidence currently known. There will be no claim greater than $75,000 based on the evidence currently known by the Plaintiff." (Exhibit C, at 11). This response gives Plaintiff an out if she decides that she wants to ask the jury for more than what is requested in her *ad damnum*.

Even though Plaintiff states in her Complaint that she is not seeking more than $74,000 she can easily amend her complaint to take out this limit after the time limit for removal has passed. Even if she does not amend, she can ask the jury for more and it would be lawful for them to return a verdict for more. Plaintiff's *ad damnum* clause is of no real consequence in determining what a Randolph County jury will award if all of Plaintiff's allegations are proved to be true. Therefore, it is of no real consequence to a determination of what the amount in controversy is in this case.

6

**b. Plaintiff claims compensatory damages that standing alone put the amount in controversy above $75,000.**

Plaintiff claims that she has suffered the following compensatory damages: "(a) She has not been paid benefits due under the terms of the policy. (b) She has been caused to suffer emotional distress and anxiety over her treatment by the Defendant. (c) She has lost the interest on time value of the money which should have been paid to her." (Exhibit A, Complaint at Bad Faith ¶ 5). Admittedly, the Plaintiff's claim for lost interest cannot be taken into consideration when determining the amount in controversy. *See* 28 U.S.C. § 1332(a). However, wrongfully denied benefits can be considered; and, Plaintiff is specifically contending that she is entitled to $50,000 in benefits for damages to her dwelling and $10,000 in benefits for loss of use of her property. (Exhibit A, Complaint at ¶ 19, Breach of Contract ¶ 1). Thus, in total, Plaintiff is claiming $60,000 in wrongfully denied benefits.

In addition to the $60,000 for wrongfully denied benefits, Plaintiff claims that, "[s]he has been caused to suffer emotional distress and anxiety over her treatment by the Defendant." (Exhibit A, Complaint at Bad Faith ¶ 5) Emotional distress damages are available for Plaintiff's bad faith claim. *Chavers v. National Sec. Fire & Casualty. Co.*, 405 So. 2d 1 (Ala. 1981) (stating that mental distress damages are available in bad faith claims). Furthermore, if Plaintiff prevails in establishing liability the jury **must** return a verdict at least as high as the uncontradicted special damages, as well as **an amount sufficient to make any compensation for pain and mental suffering**. *Shannon v. Miller*, 644 So. 2d 9 (Ala. 1994) (emphasis added). The amount given for emotional distress is up to the discretion of the jury. *First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997).

7

The amount given for emotional distress is often several multiples above the award for other compensatory damages. For example, in *First Commercial Bank v. Spivey*, the court considered the defendant's argument that the compensatory damage award on plaintiff's fraud claim was excessive and affirmed the award despite the fact that they determined that $450,000 of the $500,000 compensatory award was based on emotional distress damages. 694 So. 2d at 1326.

In the present case even a modest 1:1 ratio of ascertainable compensatory damages to mental anguish damages would yield a total compensatory award of $120,000. In the opinion of Skip Ames, who is an expert at assessing case values, it would not be uncommon to see damages awarded for mental anguish that exceed damages awarded for economic losses. (Exhibit D, Affidavit of Ames). Furthermore, he has concluded that taking all of the Plaintiff's allegations as true, and assuming he prevailed on all of the counts of his complaint, the amount in controversy only taking into account compensatory damages is well above $75,000. (Exhibit D, Affidavit of Ames). This means that it is a "legal certainty" that if Plaintiff prevails on all counts of her complaint the jury would return a verdict in excess of $75,000 on compensatory damages alone.

### c.  Plaintiff is requesting punitive damages on top of the compensatory damages.

On top of compensatory damages, Plaintiff asks for punitive damages. (Exhibit A, Complaint). It cannot be disputed that, under Alabama law, punitive damages may be claimed in actions for bad faith, and that Alabama juries have often awarded damages far in excess of this Court's jurisdictional threshold. *See State Farm Mutual Automobile Insurance Co. v. Robbins*, 541 So. 2d 477 (Ala. 1989); *see, e.g., United Services Automobile Ass'n v. Wade*, 544 So. 2d 906 (Ala. 1989) ($3.5 million punitive damage award for bad faith remitted to $2.5 million); *United American Insurance Co. v. Brumley*, 542 So. 2d 1231 (Ala. 1989) ($1 million punitive damage

award for bad faith); *State Farm Mutual Automobile Insurance Co. v. Robbins*, 541 So. 2d 477 (Ala. 1989) ($5 million punitive damage award for bad faith remitted to $500,000).

The case at bar is similar to *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1 (Ala. 2001). In *Acceptance*, the plaintiffs sued their insurance company for bad faith for failing to pay certain expenses in accordance with plaintiffs' insurance policy. The jury in *Acceptance* awarded approximately $1,470,000 in compensatory and punitive damages. *See generally, id.* at 18-24. According to the Alabama Supreme Court's analysis, the plaintiffs actually suffered approximately $40,000 in out-of-pocket expenses. *Id.* The Supreme Court also awarded $20,000 in mental anguish for a total of $60,000 in compensatory damages and reduced the punitive damages to $180,000. *Id.* Accordingly, the plaintiffs received approximately $240,000 in damages for a $40,000 out-of-pocket claim. *Id.*

As evidenced by cases like *Acceptance*, a lawsuit such as the present one seeking compensatory and punitive damages in Alabama creates a situation where the amount in controversy exceeds $75,000. Alabama law gives the jury the discretion to determine the amount of punitive damages.

If Plaintiff were to receive nothing more than a mere 1:1 ratio of compensatory to punitive damages, the amount would equal $120,000. These compensatory damages figures do not include any analysis for mental anguish. Again, assuming that the Plaintiff receives their $60,000 for wrongfully denied benefits, an equal amount for mental anguish and emotional distress, and punitive damages of a 1:1 ratio, common sense indicates that the Plaintiff's claims easily exceed the jurisdictional minimum of this Court.

Plaintiff's responses to Lexington's requests for admission evidence that she is aware that the true amount in controversy in this case is above $75,000. Lexington asked Plaintiff to

"[a]dmit that you waive, release and remit your claim to any damages greater than $75,000." (<u>Exhibit B</u> at 6). Plaintiff responded "[d]enied as phrased as Plaintiff is not admitting that she is releasing any claim, only that she is not claiming in excess of $75,000." (<u>Exhibit C</u> at 6). This response makes it clear that if a jury were to award Plaintiff more than $75,000, which they certainly will if all of Plaintiff's allegations are true, she would accept it. If Plaintiff really felt that the amount in controversy in this case was less than $75,000 she would have no problem admitting that she would not accept more than $75,000.

In the opinion of Skip Ames, if Plaintiff's allegations regarding the behavior of Lexington are true, the amount in controversy considering ***punitive damages alone*** is more than $75,000. (<u>Exhibit D</u>, Affidavit of Ames). It follows that the amount in controversy taking into consideration ***compensatory and punitive damages*** unquestionably exceeds $75,000.


## CONCLUSION

This Court has jurisdiction in this case. Complete diversity exists between Plaintiff and Lexington. In addition, Lexington has shown that given the high amount of compensatory damages Plaintiff is claiming and his demand for Punitive damages, that to a "legal certainty" the amount in controversy for federal diversity jurisdiction is satisfied. Lexington should not be deprived of its constitutional right to a federal forum in this case under Article III of the United States Constitution.

Contemporaneously with the filing of this Notice of Removal, Lexington will file a copy of the Notice of Removal with the Clerk of the Circuit Court of Randolph County, Alabama, in accordance with 28 U.S.C. § 1446(d). Lexington reserves the right to amend this Notice of Removal as deemed necessary or appropriate.

**WHEREFORE**, premises considered, defendant prays that the above-referenced cause now pending against it in the Circuit Court of Randolph County, Alabama, be removed to the United States District Court for the Middle District of Alabama, Eastern Division.

JAMES W. LAMPKIN, II (LAMPJ7474)
E-Mail: jwl@alfordclausen.com
WILLIAM C. GRAYSON (GRAYW0062)
E-Mail: wcg@alfordclausen.com
Attorneys for Defendant, Lexington Insurance Company

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

John A. Tinney (TIN005)
PO Box 1430
739 Main Street
Roanoke, AL  36274

Ms. Kim S. Benefield, Clerk
Circuit Court of Randolph County, Alabama
PO Box 328
Wedowee, AL  36278

Done this 30th day of June, 2006.

COUNSEL

11